UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HASAN AHMED TALEB AL-THURAYA,

                    Petitioner,

-against-

WARDEN, Orange County Correctional Facility et al.,

                    Respondents.

25-cv-2582 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

In September, an immigration judge (IJ) held a bond hearing pursuant to this Court's order. At the conclusion of that hearing, the IJ authorized Al-Thuraya's release on bond under certain conditions. The government appealed, and it sought and received an automatic stay that was later replaced by a discretionary stay. Al-Thuraya filed a motion to dissolve the discretionary stay, which the Board of Immigration Appeals (BIA) denied. Al-Thuraya then filed a motion for a preliminary injunction before this Court, asking that it order Al-Thuraya's release from custody under the bond and supervision conditions imposed by the IJ or, in the alternative, order the BIA to "lift the stay or decide the bond appeal immediately." Dkt. 57.

The Court then ordered that the BIA's discretionary stay would expire on January 8, 2026 unless the government filed a renewed request for a stay and gave Al-Thuraya notice so he could respond to the request. The Court further ordered that, if the government renewed its request, then the discretionary stay previously granted would expire on January 15, 2026 "unless the BIA extends the stay by that date, based on the 'strong showing that [the Government] is likely to succeed' standard set forth" in *Hamama v. Adducci*, 2018 WL 1905074, at *3 (E.D. Mich. Apr. 23, 2018). Dkt. 63. The Court determined that if the stay were to expire, then Al-Thuraya would be entitled to release under the bond and other conditions set forth in the IJ's order. *Id*.

But that order and Al-Thuraya's motion for a preliminary injunction became moot, because the BIA decided the government's appeal in an opinion filed on January 6, 2026. In that opinion, the BIA sustained the government's appeal, vacated the IJ's bond order, and ordered Al-Thuraya to remain in government custody. Dkt. 64-1 at 4–5.

Al-Thuraya then filed a letter-motion before this Court requesting an emergency hearing. Dkt. 64. In that motion, Al-Thuraya claims the BIA failed to comply with this Court's order to provide Al-Thuraya with an individualized hearing under the standard in *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024). He says that because the BIA determined that neither the IJ nor the BIA had jurisdiction to impose or review Al-Thuraya's custody conditions, the BIA's alternative merits holding that release was unwarranted has no force. And he says the BIA's jurisdictional holding

was wrong, so its entire opinion is "fatally flawed and demands immediate judicial review and appropriate relief." Dkt. 64.

The Court then ordered the government to respond to Al-Thuraya's letter-motion and address: "(1) the basis for the 'jurisdictional' rule invoked by the BIA, given the pendency of the Second Circuit appeal of the removal decision; (2) why any such rule would matter for purposes of Due Process and habeas review, even if it applies to conventional bond determinations; and (3) if the Court disagrees with the BIA's jurisdictional analysis, whether the BIA's merits determination nevertheless forecloses any further relief under *Black v. Decker*, or rather, whether it should be disregarded as 'dicta.'" Dkt. 65. In its response, the government expressed its view that "[t]he BIA's jurisdictional determination is wrong," but that the BIA applied the correct standard from *Black v. Decker* in denying Al-Thuraya relief on the merits in an alternative holding. Dkt. 66 at 2, 3.

The Court agrees that the BIA had jurisdiction and applied the correct standard from *Black v. Decker*, for the reasons discussed in the government's response. *See id.* at 2–3. The BIA's invalid determination that it lacked jurisdiction doesn't undercut its alternative merits holding. First off, the BIA was clear that it separately and independently decided the appeal on the merits. Dkt. 64-1 at 2 ("Even assuming, however, that the Immigration Judge had jurisdiction over the respondent's request for a redetermination of his custody status, we will also sustain DHS' appeal and vacate the Immigration Judge's September 26, 2025, bond order because, under our de novo review, DHS has met its burden of proving by clear and convincing evidence that the respondent's release would pose a danger, and also that his degree of flight risk is high enough that no amount of bond would ensure his presence at future immigration hearings.").

Second, there was nothing that prevented the BIA from deciding the case on two alternative grounds, one jurisdictional and one on the merits. That's especially true when the BIA was *wrong* that it lacked jurisdiction, and therefore its merits holding couldn't possibly be framed as improper dicta. And nothing precluded the BIA from offering an alternative holding on the merits despite wrongly determining that it lacked jurisdiction. The cases that Al-Thuraya cites are about courts *dodging* jurisdictional questions where a case is more easily resolved on the merits. That's not what happened here. But even in that context, the Second Circuit "ha[s] frequently held[] there is a distinct difference between jurisdictional questions of a statutory nature and jurisdictional questions of a constitutional nature. When a jurisdictional issue is statutory in nature, we are not required to follow a strict order of operations but instead may proceed to dismiss the case on the merits . . . ." *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 415–16 (2d Cir. 2022) (qualifying the general rule from *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998)) (internal citation omitted). Here, the BIA's jurisdictional holding wasn't even based on a statute, but rather was grounded in an administrative regulation, 8 C.F.R. § 1236.1(d)(1), which posed no bar to the BIA's alternative merits holding.

In his reply, Al-Thuraya challenges the BIA's application of the *Black v. Decker* standard. He claims the BIA "improperly conflated statutory inadmissibility with proof of dangerousness," improperly "impl[ied] that because Petitioner is on the cusp of removal, no bond should be

2

allowed," and "simply substituted its own cursory view that Petitioner's background categorically warranted detention." Dkt. 67 at 3–4.

Those arguments aren't enough to upend three of the BIA's determinations, any of which would be sufficient to preclude bond. *See* Dkt. 64-1 at 2 ("That the respondent routinely paid money to the Houthis, a Tier I terrorist organization, implicates national security concerns, and supports a determination that DHS has met its burden by clear and convincing evidence that the respondent's release would pose a danger to the community.")[1]; *id.* at 3 ("USCIS' decision denying the respondent's application for TPS cites to a 2021 article identifying a man named as 'Ahmed al-Tayeb' as a 'Category 5 FBI-watchlisted terrorist group member,' and also explains that 'security checks have confirmed' that the man the respondent traveled with is Ahmed al-Tayeb. Thus, under our de novo review, DHS has met its burden of proving by clear and convincing evidence that the respondent's release would pose a danger, and his continued detention is justified." (internal citation omitted))[2]; *id.* ("Further, even if DHS had not met its burden of proving by clear and convincing evidence that [petitioner] is a danger, DHS has met its burden of proving by clear and convincing evidence that [petitioner's] degree of flight risk is too high to support his release on bond. . . . [Petitioner] also has not provided any evidence of a valid sponsor."). The Court agrees with Al-Thuraya that the BIA's cursory treatment of the issues stands in contrast to the detailed treatment of the issues by the IJ. But the BIA cited to and applied the correct standard, and nothing in *Black* permits this Court to override the BIA just because it believes the IJ had the more convincing take. Accordingly, the Court denies Al-Thuraya's request for an emergency hearing.

\*\*\*

Although Al-Thuraya disagrees with how the BIA decided the merits, both the IJ and BIA applied the correct standard from *Black v. Decker*. Because the IJ and BIA have provided Al-Thuraya with the process he was due, there is no further relief for this Court to grant at this juncture. Of course, if Al-Thuraya's pending appeal in the Second Circuit is successful, or if he loses but isn't promptly removed, there may be changed circumstances that would furnish grounds for a new petition for relief. For the reasons discussed above, Dkt. 57 is DENIED as moot, and Dkt. 64

---

[1] Al-Thuraya says that "[m]uch of the BIA's reasoning is premised on a material factual error—an inflation of the road toll paid to bring Mr. Al-Thuraya's fruits to market by 900%, from $1.50 to $15.00," Dkt. 67 at 3 n.2, but Al-Thuraya admitted that he went through twelve checkpoints per week and would pay the Houthis about $1.50 at *each* checkpoint, for a total of "about $15 to get through all the checkpoints" each week. Dkt. 34-10 at 8–9.

[2] Because the BIA determined that DHS proved Al-Thuraya's dangerousness through clear and convincing evidence, the BIA didn't need to consider the bond conditions imposed by the IJ. *See* Dkt. 64-1 at 2–3; *Black v. Decker*, 103 F.4th at 159 ("[W]e stress that a showing of dangerousness by clear and convincing evidence would foreclose any possibility of bond. The IJ would then have no reason to consider financial circumstances or alternatives to detention.").

is DENIED. The Clerk of Court is respectfully directed to close this case.

    SO ORDERED.

Dated: January 28, 2026
       New York, New York

                                              ARUN SUBRAMANIAN
                                              United States District Judge